IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENWORTH LIFE INSURANCE CO., f/k/a GENERAL ELECTRIC CAPITAL ASSURANCE CO., and G.E. CAPITAL ASSIGNMENT CORP., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM Z. DAVIS and SETTLEMENT FUNDING LLC d/b/a PEACHTREE SETTLEMENT FUNDING, <br><br> Defendants. <br><br> ──────────────────────────────── <br><br> WILLIAM Z. DAVIS, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> STRUCTURED RECEIVABLES FINANCE #5, LLC, <br><br> Third-Party Defendant. | No. 10 C 2031 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On April 1, 2010, Genworth Life Insurance Company ("Genworth") and G.E. Capital Assignment Corporation ("G.E. Capital") (collectively "Plaintiffs") filed a Complaint for Interpleader under 28 U.S.C. §§ 1335, 1397, and 2361, against William Z. Davis ("Davis") and Settlement Funding, LLC d/b/a/ Peachtree Settlement Funding ("Peachtree") (Dkt. No. 1 ("Pls.' Compl.")). Both Peachtree and Davis filed cross-claims against each other (Dkt. Nos. 13, 19),

and Davis additionally filed a third-party complaint against Structured Receivables Finance #5 LLC ("Structured Receivables"). (Dkt. No. 20 ("Davis's 3d Party Compl.") ¶ 47.) This court has jurisdiction under 28 U.S.C. § 1335 because the adverse claimants are minimally diverse and the amount in controversy exceeds $500. (Dkt. No. 35, Jurisdictional Statement; *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) ("District Courts have subject matter jurisdiction under [28 U.S.C. § 1335] if there is 'minimal diversity' between two or more adverse claimants, and if the amount in controversy is $500 or more.").) Currently before the court is Peachtree and Structured Receivables's (collectively "Peachtree Defendants") "Motion to Dismiss or Stay Based on the Doctrine of Abstention" (Dkt. No. 28 ("Peachtree Defs.' Mot.")). For the reasons explained below, the Peachtree Defendants' Motion is denied.

BACKGROUND

The Plaintiffs filed a Complaint for Interpleader under 28 U.S.C. §§ 1335, 1397, and 2361, against defendants Davis and Peachtree with respect to the rights and obligations of the parties pursuant to an Individual Single Premium Structured Settlement Annuity Contract ("Annuity") issued by Genworth on June 7, 1997. (Pls.' Compl ¶ 5.) The Annuity identifies G.E. Capital as the Owner and Davis as both the Annuitant and the Payee. (*Id.* ¶ 5, Ex. A.)

Based on the allegations in Peachtree's Cross-Claim against Davis, on or about August 4, 2008, Peachtree entered into a purchase agreement ("First Purchase Agreement") with someone purporting to be William Z. Davis. (Dkt. No. 13, Peachtree's Cross-cl. ¶ 5.) Under the terms of the First Purchase Agreement, Peachtree purchased Davis's right, title, and interest in certain Annuity payments. (*Id.*) Peachtree then filed a "Petition for Approval of Structured Settlement Rights" in the Circuit Court of Sangamon County, Illinois (Case No. 08 CH 951) pursuant to the

2

Illinois Structured Settlement Protection Act, 215 ILCS 153/1, for court approval of the transfer, and the circuit court entered the "Agreed Order" transferring those rights on August 22, 2008. (*See* Pls.' Compl., Exs. B, C.) According to Peachtree's Cross-Claim, after the closing of the First Purchase Agreement, Peachtree assigned the Agreement to Structured Receivables. (Peachtree's Cross-cl. ¶ 9.) Peachtree also alleges that it is the seller/servicer for Structured Receivables and is authorized to pursue collection, in its own name, of the Annuity payments due to Structured Receivables. (*Id.*)

Then, on or about September 18, 2008, Peachtree entered into a second purchase agreement ("Second Purchase Agreement") with someone purporting to be William Z. Davis. (*Id.* ¶ 10.) According to the terms of the Second Purchase Agreement, Peachtree purchased Davis's right, title, and interest in certain Annuity payments. (*Id.*) Peachtree proceeded to file a second "Petition for Approval of Structured Settlement Rights" in the Circuit Court of Sangamon County (Case No. 08 CH 1178) under the Structured Settlement Protection Act for court approval of the transfer, and the circuit court entered the "Agreed Order" transferring those rights on October 10, 2008. (*See* Pls.' Compl., Exs. D, E.) In its Cross-Claim, Peachtree also alleges that after the closing of the Second Purchase Agreement, Peachtree assigned that Agreement to Structured Receivables. (Peachtree's Cross-cl. ¶ 9.) According to Peachtree's allegations, it is the seller/servicer for Structured Receivables and is authorized to pursue collection, in its own name, of the Annuity payments due to Structured Receivables. (*Id.*)

In January 2010, Davis sent a letter to Genworth claiming that someone had stolen his identity and fraudulently sold his rights in the Annuity payments to Peachtree. (Pls.' Compl. ¶ 13; *see also id.* at Ex. F.) Davis alleges that his brother, Junior Davis, stole Davis's identify

3

sometime between May and July 2008 and then entered into the First and Second Purchase Agreements with Peachtree purporting to be Davis. (Davis's 3d Party Compl. ¶¶ 14-19, 29-31.) Because Davis's claim to the Annuity payments contradicted the circuit court's orders transferring Davis's rights in the Annuity payments to Peachtree, Plaintiffs filed a Complaint for Interpleader against Davis and Peachtree in the United States District Court for the Northern District of Illinois to resolve the dispute. (Pls.' Compl. ¶¶ 14-15.)

Peachtree proceeded to file cross-claims against Davis for Breach of Contract (Count I); Constructive Trust (Count II); Unjust Enrichment (Count III); and Declaratory Judgment (Count VI). (Dkt. No. 13.) Davis similarly has asserted several affirmative defenses and cross-claims against Peachtree, including, *inter alia*, (1) "no valid sale of the [A]nnuity"; (2) negligence in allowing an imposter to sell the Annuity; (3) violation of the Structured Settlement Protection Act; and (4) violation of the anti-assignment clause in the Annuity. (Dkt. No. 19, Davis's Affirmative Defenses Peachtree's Cross-cl. ¶¶ 44-57; Davis's Cross-cl. ¶¶ 3-16.) In addition, Davis has filed a third-party complaint against Structured Receivables asserting similar claims. (Davis's 3d Party Compl. ¶¶ 50-75.)

On April 8, 2010, this court entered a restraining order enjoining any litigation against Genworth and ordered Genworth to deposit the ongoing annuity payments into the court's Registry. (Dkt. Nos. 10, 11.) Then, on August 19, 2010, Davis filed two petitions in the Circuit Court of Sangamon County (Case Nos. 08 CH 951, 08 CH 1178) to vacate the orders assigning Davis's rights in the Annuity payments to Peachtree; Davis filed amended petitions on December 2, 2010. (Case No. 08 CH 951 ("Davis's Am. Pet. I"); Case No. 08 CH 1178 ("Davis's Am. Pet. II") (attached as Ex. E to Peachtree Defs.' Mem.).) In his amended petitions, Davis alleges that

4

the Circuit Court of Sangamon County lacked jurisdiction over Davis because he was never served with a summons. (Davis's Am. Pet. I ¶¶ 44-46; Davis's Am. Pet. II ¶¶ 38-40.) He additionally requests that the circuit court vacate the two orders under 735 ILCS 5/2-1401 based on Davis's defenses to the transfer of the Annuity. (Davis's Am. Pet. I ¶¶ 44-46; Davis's Am. Pet. II ¶¶ 41-43.) The Peachtree Defendants have moved to either dismiss or stay this action under the *Colorado River* doctrine based on the pending litigation in the Circuit Court of Sangamon County. (Dkt. No. 28.)

LEGAL STANDARD

Under the *Colorado River* doctrine, "a federal court may stay or dismiss a suit when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 277 (7th Cir. 2003) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). For the *Colorado River* doctrine to apply, the federal and state suits must be parallel, i.e., "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* (quoting *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992)). If the two actions are parallel, the court then must consider the following ten *Colorado River* factors to determine if abstention by the federal court is appropriate:

(1) whether the state has assumed jurisdiction over property;
(2) the inconvenience of the federal forum;
(3) the desirability of avoiding piecemeal litigation;
(4) the order in which jurisdiction was obtained in the concurrent forums;
(5) the source of governing law, state or federal;
(6) the adequacy of state-court action to protect the federal plaintiff's rights;
(7) the relative progress of state and federal proceedings;
(8) the presence or absence of concurrent jurisdiction;

5

   (9) the availability of removal; and
   (10) the vexatious or contrived nature of the federal claim.

*Id.* at 278 (quoting *Caminiti*, 962 F.2d at 701).

  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. Abstention, however, "is appropriate only in 'exceptional circumstances,'" *AXA Corporate*, 347 F.3d at 278 (quoting *Colorado River*, 424 U.S. at 813), because "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,'" *id.* (quoting *Colorado River*, 424 U.S. at 813). The Seventh Circuit has "recognized a general presumption against abstention," *id.*, and "emphasize[d] the remarkably difficult standard that must be met before" the court can decline to exercise its jurisdiction, *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005). *See also Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997) ("Notably, we treat as paramount the overriding rule that abstention is the exception . . . ."). The Seventh Circuit reviews the district court's *Colorado River* determination for an abuse of discretion. *AXA Corporate*, 347 F.3d at 278.

  Here, Davis does not dispute that the state court actions are parallel actions under *Colorado River*. Instead, he argues that in this case the *Colorado River* factors weigh against abstention. Having examined the relevant facts of this case against the *Colorado River* factors, the court agrees with Davis that neither a stay nor a dismissal of this federal case would promote wise judicial administration.

<u>REASONS FOR DETERMINATIONS</u>

I       Analysis of the *Colorado River* Factors

      1.       Whether the State Has Assumed Jurisdiction Over the Property

The Peachtree Defendants argue that "the state [court] has assumed jurisdiction over the property in question." (Dkt. No. 28 ("Peachtree Defs.' Mem.") at 8.) For purposes of *Colorado River* abstention, however, the inquiry into whether the state has assumed jurisdiction over "property" applies to real–not personal–property. *See, e.g., Travelers Indem. Co. v. Madonna*, 914 F2d 1364, 1368 (9th Cir. 1990) ("[M]oney . . . is not the sort of tangible physical property referred to in *Colorado River*." (alteration in original) (quoting *Am. Int'l Underwriters v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988))). It their Reply, the Peachtree Defendants do not respond to Davis's argument that this factor only applies to physical property. (*See* Dkt. No. 33 ("Peachtree Defs.' Reply") at 4-9.) The court, therefore, assumes that the Peachtree Defendants do not dispute that annuity payments are not property under the *Colorado River* doctrine.

Nevertheless, although money generally is not property for purposes of assessing the *Colorado River* factors, courts have recognized that "registry funds are necessarily an exception to this pronouncement." *United States v. Rubenstein*, 971 F.2d 288, 295 (9th Cir. 1992). As the Ninth Circuit has explained, "Funds deposited in the registry of a federal district court are *in custodia legis*. As such, the district court's control over the funds is virtually supreme." *Id.* at 294. Because this court has already assumed custody of the funds at issue by ordering that the Plaintiffs deposit the funds in this court's Registry, this factor strongly weighs against abstention.

      2.       The Inconvenience of the Federal Forum

In addressing the next factor–the inconvenience of the federal forum–"the question is *not*

7

whether the federal forum is inconvenient, but rather whether there is 'any contention that the federal forum was any less convenient to the parties than the state forum.'" *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988) (emphasis in original) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)). In other words, the court considers "whether the inconvenience of the federal forum *is so great* that this factor points toward abstention." *Id.* (emphasis added).

According to the Peachtree Defendants, the Northern District of Illinois "is clearly less convenient than the state court in Sangamon County," because the state court is "where each of the interested parties have either consented to or failed to object to the exercise of jurisdiction in the past." (Peachtree Defs.' Reply 5.) Whether the state court previously had jurisdiction–an issue Davis contests–has little bearing on whether the federal forum is more inconvenient than the state forum. Instead, "the inconvenience factor primarily involves the physical proximity of the federal forum to the evidence and witnesses." *Evanston*, 844 F.2d at 1191. In their Reply, the Peachtree Defendants do not dispute that Peachtree does business in Chicago, nor do they challenge Davis's assertion that other potential witnesses, including Davis's mother and representatives from Genworth, reside in Chicago. (*See* Peachtree Defs.' Reply 4-5; Davis's Resp. 7-8.) Consequently, the facts presented to the court do not demonstrate that the inconvenience of litigating in this federal forum is "so great" such that this factor supports abstention.

3. The Desirability of Avoiding Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyrer v. City of S. Beloit*, 456 F.3d

744, 755 (7th Cir. 2006). In his Response, Davis does not address whether a stay would avoid piecemeal litigation, and the Peachtree Defendants provide limited analysis of this factor. (*See* Davis's Resp. 6-13; Peachtree Defs.' Reply 5-6 .) However, because Davis agrees that the state and federal cases are parallel litigations involving similar issues, the court assumes for purposes of the Peachtree Defendant's Motion that staying the federal litigation would reduce the possibility of piecemeal litigation. Nevertheless, although this factor supports abstention, "[i]t is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy–in having two active lawsuits instead of one. That will always be possible when there is a parallel state suit pending." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1158 (7th Cir. 1990) (quoting *Evans Transp. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982)).

      4.      The Order in Which Jurisdiction Was Obtained in the Concurrent Forums

In this case, the parties dispute whether the circuit court obtained jurisdiction before this federal court. According to Davis, because the circuit court entered final judgments in the 2008 cases before Genworth filed its complaint in federal court, the original 2008 state court actions "cannot constitute contemporaneous or concurrent litigation within the meaning of *Colorado River*." (Davis's Resp. 8.) Instead, the "parallel" state court actions, Davis contends, are the 2010 petitions to vacate, which commenced after this court obtained jurisdiction. The Peachtree Defendants, on the other hand, argue that the circuit court obtained jurisdiction in 2008 before the instant suit was filed in federal court.

Based on the considerations underlying the *Colorado River* doctrine, this court agrees with Davis that the federal court obtained jurisdiction over the present dispute first. According

9

to the Supreme Court, this "priority" factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21. Here, although Peachtree initiated the state court proceedings before the Plaintiffs filed their Complaint for Interpleader in federal court, this court agrees with Davis that the respective filing dates are not dispositive.

The *Colorado River* analysis applies to "parallel proceedings." As defined by the Seventh Circuit, "parallel proceedings" involve "substantially the same parties" who "are contemporaneously litigating substantially the same issues in another forum." *AXA Corporate*, 347 F.3d at 278 (quoting *Caminiti*, 962 F.2d at 700). In this case, the state and federal court actions did not transform into "parallel proceedings" until Davis filed his petitions to vacate in the Circuit Court of Sangamon County.

Specifically, during the initial state court proceedings, the parties before the state court agreed to the transfer of the annuity payments, and the state court simply entered their "Agreed Orders." The dispute over ownership did not enter the court system until the Plaintiffs filed their Complaint for Interpleader in federal court. Davis then filed his petitions to vacate the underlying state court judgments in the Circuit Court of Sangamon County. At this point, the federal and state suits became "parallel proceedings" because the parties were "contemporaneously litigating the same issues in another forum." Because the Plaintiffs filed their Complaint for Interpleader in federal court before the ownership issues entered the state court proceedings, the court finds that this factor does not support abstention.

5. The Source of the Governing Law

The parties do not dispute that Illinois law applies to the claims at issue in this case. The

10

application of state law, however, is not dispositive to the abstention analysis. Instead, as the Seventh Circuit has explained, "[T]his factor, standing alone, is not sufficient to tip a balance heavily weighted in favor of the exercise of federal jurisdiction." *Sverdrup Corp.*, 125 F.3d at 550(quoting *Schneider Nat'l*, 903 F.2d at 1158); *see also Evanston*, 844 F.2d at 1193 ("The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances."). Indeed, in addressing this factor in *Schneider National*, the Seventh Circuit noted that "[f]ederal courts determine difficult questions of state law everyday." *Schneider Nat'l*, 903 F.2d at 1157.

In this case, the record before the court does not demonstrate that the relevant issues involve complex questions of state law that would be more appropriately resolved by the state court. This factor accordingly is neutral in the court's analysis.

6. The Adequacy of the State-Court Action to Protect the Federal Plaintiff's Rights

Like factor five, the adequacy of the state court action to protect Davis's rights also is a neutral factor. The Fifth Circuit's discussion of this factor in *Evanston* is instructive:

> [I]t is clear from its nature that it can only be a neutral factor or one that weighs against, not for, abstention. A party who could find adequate protection in state court is not thereby deprived of its right to the federal forum, and may still pursue the action there since there is no ban on parallel proceedings.

*Evanston*, 844 F.2d at 1193. Here, because this court assumes that the state court would be able to adequately protect Davis's rights, and the parties have not presented any evidence or arguments to the contrary, this factor is neutral in the court's analysis.

7. The Relative Progress of State and Federal Proceedings

Based on the parties' representations, this court also finds that the relative progress of the

11

state and federal proceedings does not support abstention. The federal interpleader action has already involved the filing of claims, defenses, and cross claims; briefing on the Peachtree Defendants' Motion to Dismiss; a Rule 26 Conference; the entry of a restraining order protecting Genworth from additional litigation; and the entry of an order directing Genworth to deposit annuity payments in the court's Registry.

The dockets for the 2008 state court cases, in contrast, indicate that no activity has occurred since Davis filed his amended petitions. *See* Sangamon County Circuit Clerk's Records Search website, http://67.128.239.91/sccc/Home.sc (last visited Apr. 29, 2011). This understanding is consistent with the parties' representations to the court. (*See* Davis's Resp. 12; Peachtree Defs.' Reply 7-8.) Moreover, the circuit court's involvement in initially granting the petitions to approve the structured settlement rights appears to have been minimal; both petitions were unopposed, and circuit court merely entered the submitted "Agreed Orders." This court, therefore, disagrees with the Peachtree Defendants that the state court matter "has advanced more in terms of its knowledge of the specific controversies in question." (Peachtree Defs.' Reply 8.) Because the federal case has progressed more than the state court proceedings, the court finds that this factor weighs against abstention.

   8. The Presence or Absence of Concurrent Jurisdiction

Assuming for purposes of the Peachtree Defendants' Motion that the state court has jurisdiction over Davis, the parties otherwise do not dispute the presence of concurrent jurisdiction. The Seventh Circuit appears to have reached conflicting conclusions with respect to whether the presence of concurrent jurisdiction weighs either in favor of or against abstention. *Compare Ingalls v. AES Corp.*, No. 07-3086, 311 Fed. Appx. 911, at *915 (7th Cir. Apr. 2,

12

2008) (finding concurrent jurisdiction supported abstention), *with AXA Corporate*, 347 F.3d at 278-79 (discussing with approval district court's finding that concurrent jurisdiction did not support abstention). Here, the Peachtree Defendants do not address the independent significance of this factor but rather discuss this factor in connection with factor six, arguing that the presence of concurrent jurisdiction demonstrates that litigating in state court "will adequately protect the federal plaintiff's rights." (Peachtree Defs.' Mem. 10.) Because the Peachtree Defendants have offered no other arguments for why concurrent jurisdiction supports abstention in this case, the court affords this factor the same weight it afforded factor six and finds that the presence of concurrent jurisdiction is a neutral factors in its *Colorado River* analysis.

9. The Availability of Removal

Turning to the next factor, the Peachtree Defendants do not dispute that Davis could not use removal procedures in the state court to have his claims heard in federal court. Consequently, this factor also counsels against abstention. *See AXA Corporate*, 347 F.3d at 279 (discussing with approval district court's finding that unavailability of removal did not support abstention); *Alsdorf v. Bennigson*, Case No. 04 C 5953, 2004 WL 2806301, at *10 (N.D. Ill. Dec. 3, 2004) (Coar, J.) (finding unavailability of removal weighed against abstention).

10. The Vexatious or Contrived Nature of the Federal Claim

Finally, the Peachtree Defendants argue that Davis's actions in this case are contrived and unnecessary because he filed a petition to vacate the state court judgments while opposing the Peachtree Defendants' Motion to stay or dismiss the federal action. The court disagrees that such actions amount to an "exceptional circumstance warranting abstention" as the Peachtree Defendants contend. The relevant factor is the "vexatious or contrived nature of the *federal*

13

*claim.*" *AXA Corporate*, 347 F.3d at 278 (emphasis added) (quoting *Caminiti*, 962 F.2d at 701). Here, the Plaintiffs, not Davis, initiated the federal interpleader action, and nothing in the record suggests that Davis's actions in filing cross-claims and a third party complaint before this court while simultaneously seeking to vacate the state court judgments are either vexatious or contrived. This factor similarly does not support abstention.

II.     Summary of the *Colorado River* Factors

Based on the above analysis and in light of the Seventh Circuit's instruction that the "overriding rule" is against abstention, *Sverdrup Corp.*, 125 F.3d at 550, this court does not find that such "exceptional" circumstances are present to warrants abstention, *see AXA Corporate*, 347 F.3d at 278 (quoting *Colorado River*, 424 U.S. at 813). The Peachtree Defendants' Motion accordingly is denied.

## CONCLUSION

For the reasons explained above, this court does not find that the *Colorado River* factors support federal abstention in this case. The Peachtree Defendants' "Motion to Dismiss or Stay Based on the Doctrine of Abstention" (Dkt. No. 28), is denied. Status is set for May 12, 2011, at 9:00 a.m. to schedule further dates. The parties are encouraged to discuss settlement.

                ENTER:

                */s/ James F. Holderman*
                JAMES F. HOLDERMAN
                Chief Judge, United States District Court

Date: May 3, 2011